Filed 11/17/20  P. v. Sanchez CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>JOE ANGEL SANCHEZ,<br><br>     Defendant and Appellant. | B299635<br><br>(Los Angeles County<br>Super. Ct. No. A960340) |

APPEAL from an order of the Superior Court of Los Angeles County, Laura F. Priver, Judge.  Affirmed.

Heather J. Manolakas, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles A. Lee and Stacy S. Schwartz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant appeals the denial of his petition for resentencing under Penal Code section 1170.95.[1]  As defendant was not entitled to relief as a matter of law, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

1. ***The Underlying Offense, Conviction, and Appeal***[2]

    A. *The Crimes*

The facts supporting defendant's murder conviction illustrate the adage that there is no honor among thieves. Defendant, the victim, and all of the other players were members of a robbery ring which focused on jewelry stores in the Los Angeles Jewelry Mart.  The members of the ring included Michael Apardian, who planned the robberies; and Gustavo Alderette, who recruited the participants.

Alderette recruited defendant to commit a robbery for the gang.  Alderette and defendant had been friends for 13 years and they shared an apartment.

On December 30, 1986, defendant attempted to rob the owner of V.N.T. Diamond Company at his shop.  Defendant

---

[1]  All undesignated statutory references are to the Penal Code.

[2]  We take our discussion of the facts from the opinion affirming defendant's conviction.  (*People v. Sanchez* (Dec. 17, 1992, B057765) [nonpub. opn.].)  The Attorney General initially sought judicial notice of our entire file in the prior appeal.  The court's file had been destroyed with the exception of the prior opinion.  The Attorney General then submitted a second request for judicial notice, seeking judicial notice of several excerpts from the prior record, including the information, the verdicts, a few of the jury instructions, and selected pages from counsel's argument.  We grant that request, and rely on those documents in our discussion of the proceedings in the trial court.

bound and gagged the owner, struck him with a gun, and threatened to kill him if he did not open the safe. Defendant left empty-handed.

Concerned that defendant was wanted for the first (attempted) robbery, Alderette recruited two more men, David Matters and Hector Estrada, for the next robbery. On February 11, 1987, Matters and Estrada entered Diamantina West and robbed the owner at gunpoint. They left with $52,000 in jewelry, but no cash. When they turned the jewelry over to the rest of the gang, Alderette and Apardian expressed their disappointment that Matters and Estrada did not get more.

The following day, Apardian gave Matters $200 to leave town; Matters left.

A few days after the Diamantina West robbery, the victim discussed the crime with his fellow jewelry store owner, Alpo Eykjian, unaware that Eykjian was also part of the robbery ring. The Diamantina West owner exaggerated his loss to Eykjian. From this point on, the members of the gang turned on each other, with fatal consequences.

About 10 days after the robbery, defendant and Alderette brought Estrada – one of the two point men in the Diamantina West robbery – to their apartment. They attacked and bound Estrada, accusing him of having taken money in the robbery and not relinquishing it to the gang. They represented that they had already beaten Matters (who was in fact sent away), and threatened to kill Estrada if he did not disclose the whereabouts of the money. Defendant had a knife. Estrada denied that he and Matters had taken any money. Defendant and Alderette untied Estrada and told him it was Apardian who had accused him of taking the money. They told Estrada that Apardian was

3

coming to the apartment and that he would have to kill Apardian to prove that the money had not been taken, or else they would kill Estrada.  Believing his life was in jeopardy, Estrada agreed.

When Apardian arrived, defendant and Alderette attacked and bound him.  Alderette gave Estrada the knife and told him to kill Apardian.  Estrada stabbed Apardian twice.  Alderette took Apardian's bracelet, chain, watch and some money.  Defendant, Alderette and Estrada worked together to dispose of Apardian's body.  Alderette gave Estrada money to disappear to Mexico.  Apardian's body was discovered shortly thereafter, with carpet fibers similar to those from the carpet in defendant and Alderette's apartment.  When defendant was arrested, he was wearing Apardian's chain.

B.    *Defendant's Trial*

Defendant was charged by information with the attempted robbery of V.N.T. Diamond Company, the robbery of Diamantina West, the robbery of Apardian, and the murder of Apardian.[3]

Estrada pleaded guilty to the Diamantina robbery and the murder of Apardian.  As part of his plea, he agreed to testify against defendant, which he did.  Matters pleaded guilty to the Diamantina robbery and also testified against defendant, specifically recounting conversations in which defendant, Alderette and Estrada had admitted the Apardian murder.

Finally, Alderette, who had also pleaded guilty to the Apardian murder, testified in defendant's defense.  He explained that, sometime after the robbery, there had been an argument, in Alderette's apartment, in which Apardian accused Estrada of

---

[3]    The disposition of charges against Eykjian, another member of the ring, is not revealed by the limited record before us.

4

stealing from the rest of them and refused to pay Estrada for participating in the robbery. Alderette decided to calm Apardian by tying him up with the help of defendant and Estrada. Apardian became calm. To Alderette's surprise, Estrada got a butcher knife from the kitchen and stabbed Apardian, killing him. Alderette testified that he nonetheless pleaded guilty to the Apardian murder because he felt responsible, and as part of a negotiated disposition that included unrelated charges against him.

Defendant was convicted of the attempted robbery of V.N.T. Diamond Company (§§ 664/211), the first degree murder of Apardian (§ 187, subd. (a)), and petty theft from Apardian (§ 484), as a lesser offense to the charge of robbery. He was sentenced to 25 years to life in prison for the murder, with a consecutive determinate term for the attempted robbery and a concurrent term for the petty theft.

C.    *The Appeal*

On appeal, defendant argued, among other things, that the trial court erred in refusing to instruct the jury on voluntary manslaughter. Defendant argued that Alderette's testimony supported a finding that Estrada, angry over not being paid, acted in the heat of passion in killing Apardian. The Court of Appeal found no instructional error, on the basis that if Estrada killed in the heat of passion, defendant "was not culpable for any homicide at all, since no evidence suggested that he [defendant] personally acted upon a sudden quarrel or heat of passion."

**2.    *Proceedings on Defendant's Section 1170.95 Petition***

On April 8, 2019, defendant filed a form petition for resentencing under section 1170.95. He requested counsel. He attached to the petition, with no explanation, two jury

5

instructions apparently given in his case: CALJIC 3.00, indicating that aiders and abettors are principals in the commission of a crime; and a special instruction regarding the timing of defendant's intent to steal from Apardian.[4] He also included a copy of the verdict form showing he was found guilty of first degree murder.[5]

On June 13, 2019, the trial court denied the section 1170.95 motion, without appointing counsel, based on its review of defendant's submission "and the other documents available to the court." The trial court concluded that the murder did not occur in the course of a robbery, and was not prosecuted under the doctrine of natural and probable consequences. To the contrary, defendant was a direct aider and abettor.[6]

Defendant filed a timely notice of appeal.

### DISCUSSION

Senate Bill No. 1437 (SB 1437) invalidated the natural and probable consequences doctrine as it relates to murder, and

---

[4] Specifically, the instruction stated: "If you find that the taking of property, if any, from Mike Apardian, occurred after his death, then you must find the defendant not guilty of Count III, unless you find that the intent to steal existed prior to the killing."

[5] The verdict form does not specifically indicate the basis for the finding of first-degree murder. The Attorney General would later submit evidence indicating the only basis for first-degree murder submitted to the jury was premeditated murder.

[6] The trial court also found defendant was a "major participant" in the crime. In the present appeal, the Attorney General concedes that this finding was unnecessary, as it would be relevant only if defendant were convicted of felony murder.

narrowed liability for felony murder.  (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 323 (*Verdugo*) review granted Mar. 18, 2020.)  It also enacted section 1170.95, providing a means by which a defendant convicted of murder under prior authority could seek resentencing under the new version of the law.

Once a section 1170.95 petition is filed, there follows a multi-step process by which the court first determines whether the petition is facially complete, and, if so, whether the petitioner has made a prima facie showing that he falls within the provisions of statutory eligibility.  (*People v. Torres* (2020) 46 Cal.App.5th 1168, 1177 (*Torres*) review granted June 24, 2020, *Verdugo, supra*, 44 Cal.App.5th at pp. 329-330.)  The materials which the court can review at this stage include the prior appellate opinion (*People v. Lee* (2020) 49 Cal.App.5th 254, 263, review granted July 15, 2020; *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1136, fn. 7, review granted Mar. 18, 2020) and the jury instructions given in the defendant's trial.  (*People v. Edwards* (2020) 48 Cal.App.5th 666, 674, review granted July 8, 2020.)  If the court determines the petitioner is ineligible for relief as a matter of law, the petition is denied at this first stage; if not, the court proceeds to the next step.  (*Torres,* at pp. 1177-1178.)

At the first stage, the court's inquiry is only whether the defendant is ineligible for relief under section 1170.95 as a matter of law.  (*Verdugo, supra,* 44 Cal.App.5th at p. 329.)  If, for example, the court's review of the record of conviction necessarily establishes the defendant was convicted on a ground that remains valid after SB 1437's amendment of murder law, the petition may be denied at this stage.  (*Id.* at pp. 329-330.)  But if the court "cannot rule out the possibility that the jury relied on" a

7

theory invalidated by SB 1437, defendant has established a prima facie case of eligibility. (*People v. Offley* (2020) 48 Cal.App.5th 588, 599.)

Here, the trial court concluded that defendant's conviction was based on direct aiding and abetting, rendering him ineligible for relief as a matter of law. (§§ 188, 189.) We must determine whether defendant's murder liability instead could have been based on felony murder or the natural and probable consequences doctrine.[7]

As to felony murder, the jury was not instructed on that theory. The jury was instructed in the language of CALJIC 8.10 on the elements of murder: (1) a human being was killed; (2) the killing was unlawful; and (3) the killing was done with malice aforethought. The printout of the jury instruction given indicates that the form instruction offers, as an alternative to malice aforethought, that the killing was done during the commission or

---

[7] We note that our analysis would have been simpler if the parties had provided this court with the *entire* set of jury instructions given at trial. Defendant submitted two instructions as exhibits to his section 1170.95 petition; the Attorney General submitted several instructions in connection with its request for judicial notice. It therefore seems apparent that collectively the parties had access to all the jury instructions. This court does not. As we indicated in our response to the Attorney General's first request for judicial notice, this court's record of defendant's appeal has been destroyed. While we conclude the limited record the parties have provided is sufficient to resolve this appeal, the parties generally should provide this court with the full jury instructions, when the presence or absence of jury instructions on felony murder and natural and probable consequences could conclusively resolve the appeal.

8

attempted commission of a felony dangerous to human life. That portion of the instruction was crossed out in the version given to the jury. The reporter's transcript confirms that the part of the jury instruction providing for felony murder as an alternative to express malice was not given.

As to natural and probable consequences, the evidence of an absence of instruction on the doctrine is less clear, due to the limited record the parties provided on appeal.[8] The facts and analysis in the prior appellate opinion, however, undermine any suggestion that the prosecutor proceeded on a theory of natural and probable consequences. The opinion recognizes there were only two factual scenarios presented by the evidence: (1) defendant and Alderette intentionally and with premeditation forced Estrada to murder Apardian, in which case defendant was guilty as a direct aider and abettor;[9] or (2) Estrada acted "in a sudden fit of anger, taking [Alderette] and [defendant] by surprise," in which case defendant "was not culpable for any

---

[8]    In its respondent's brief on appeal, the Attorney General represents that the jury was not instructed on the natural and probable consequences doctrine. Defendant does not affirmatively disagree.

[9]    Page six of the opening brief suggests the trial court ruling on defendant's petition found that defendant "was not present during the murder . . . ." We believe this statement was a typographical error. The trial court's actual words on the subject were, "Ultimately, *at the petitioner's direction*, another individual stabbed the victim to death. The petitioner was not only present when this occurred but helped tie up the victim, threatened the victim and directed the other individual to stab the decedent. He and the other individuals then disposed of the body." (Italics in the original.)

9

homicide at all." There simply was no third option of natural and probable consequences liability. By finding defendant guilty, the jury necessarily found that defendant was a direct aider and abettor and disbelieved the testimony that Estrada had acted rashly on his own.

Defendant does not suggest any basis on which a theory of natural and probable consequences could have been successfully pursued. While defendant was charged with robbery of Apardian, he was convicted of the lesser included offense of petty theft, meaning the jury found the intent to steal was formed after the murder.

Defendant makes no reasoned argument suggesting that he was, in fact, prosecuted on a natural and probable consequences theory. He argues only that his section 1170.95 petition should not have been summarily denied without counsel, because he "was entitled to counsel to determine under what theories the prosecutor proceeded at trial, . . . not only so that petitioner could present that evidence in support of his petition, but also to create an appellate record" and that "it is possible that the appointed counsel could discover some evidence to support appellant's petition." We find nothing in section 1170.95 that suggests a fishing expedition as suggested by appellant is required. The prima facie review is conducted as a matter of law, and requires no appointment of counsel.[10] (*Torres, supra,* 46 Cal.App.5th at

---

[10] Defendant briefly argues that the denial of counsel violated his constitutional rights. He does not rely on the Sixth Amendment right to counsel, but suggests there was a violation of his due process rights because the trial court failed to follow the procedures guaranteed by section 1170.95 itself. As we conclude the statute did not require the appointment of counsel, there was no due process violation as defendant frames the issue.

p. 1177; *Verdugo, supra,* 44 Cal.App.5th at p. 323. Contra *People v. Cooper* (2020) 54 Cal.App.5th 106, review granted Nov. 10, 2020.) The record demonstrates the defendant is legally ineligible for relief.

## ***DISPOSITION***

The order denying defendant's section 1170.95 petition is affirmed.


RUBIN, P. J.

WE CONCUR:



BAKER, J.



MOOR, J.

11